UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:07-CV-48-F

| | |
|---|---|
| VIRGINIA RADCLIFFE,<br>Plaintiff, | )<br>)<br>) |
| v. | )    MEMORANDUM AND ORDER |
| | ) |
| AVENEL HOMEOWNERS<br>ASSOCIATION, INC., et al.,<br>Defendants. | )<br>)<br>) |

This matter is before the Court on Defendants Stephen Murray and Carmelo Buccafurri's Motion for Summary Judgment [DE-55], Defendant David Hull's Motion for Summary Judgment [DE-77], Defendant Richard Progelhof's Motion for Summary Judgment [DE-80], Defendant Thomas Dinero's Motion for Summary Judgment [DE-82], Defendant Avenel Homeowners Association's ("HOA") Motion for Summary Judgment [DE-83], Defendant Ronald Zanzarella's Motion for Summary Judgment [DE-85], Plaintiff Virginia Radcliffe's Motion for a Hearing on Affidavits for Defendants Submitted in Bad Faith [DE-127], Defendant Zanzarella's Motion to Strike [DE-133], Defendant HOA's Motion to Strike [DE-137], Plaintiff's Motion for an Accounting from All Defendants of Alleged "Missing" Discovery Information so Plaintiff Can Supplement [DE-144], Plaintiff's Motion for Time to Supplement Her Motions and Memorandum for Medical Reasons Under Medical Seal [DE-145], and Plaintiff's Motion to Supplement/Amend Her Memorandum Opposing Summary Judgment for Medical Reasons Under Medical Seal [DE-150]. For the reasons stated below, the Court will: grant in part Plaintiff's Motion for Time to Supplement Her Motions and Memorandum for Medical Reasons Under Medical Seal with respect to the request for additional time to supplement her previously filed response with Addendum A and Addendum

B and deny it without prejudice in all other respects; grant in part Plaintiff's Motion to Supplement/Amend Her Memorandum Opposing Summary Judgment for Medical Reasons Under Medical Seal to the extent it seeks to incorporate Addendum A and Addendum B into her previously filed response and deny it without prejudice in all other respects; deny without prejudice Plaintiff's Motion for an Accounting from All Defendants of Alleged "Missing" Discovery Information so Plaintiff Can Supplement; deny without prejudice Plaintiff's Motion for a Hearing on Affidavits for Defendants Submitted in Bad Faith; deny without prejudice Defendant Zanzarella's and Defendant HOA's respective Motions to Strike; and grant in part all Defendants' Motions for Summary Judgment with respect to Plaintiff's claim under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and deny them without prejudice in all other respects. Furthermore, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The statutes of limitatons are tolled during the pendency of such claims before this Court pursuant to 28 U.S.C. § 1367(d), and Plaintiff will have 30 days after the date of this Memorandum and Order to refile such claims in state court if she so chooses.[1]

## I. BACKGROUND

On March 26, 2007, Plaintiff filed a Complaint [DE-1] with the Court, in which she alleges claims against the HOA and other current and former residents of the Avenel Subdivision for: (1) violations of the FHA; (2) violations of N.C. Gen. Stat. § 99D-1; (3) assault and battery; (4) false imprisonment; (5) malicious prosecution; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; and (8) tortious interference with prospective economic

---

[1] The Court, in acknowledging that the statutes of limitations for such claims are tolled during their pendency before this Court and for 30 days after the date of this Memorandum and Order, in no way suggests whether or not such claims are otherwise time barred.

2

advantage. Briefly stated, Plaintiff's claims arise out of a series of events that started approximately one year after she purchased a home and moved into the Avenel Subdivision in Wilmington, North Carolina. She claims that her neighbors harassed her as part of a conspiracy to get her to move, and that this conspiracy was motivated by discrimination toward her gender (female), her religious affiliation (Christian), her perceived disability (mental illness), and the race of some of her house guests (African-American), as well as in retaliation for filing a claim of discrimination. In support of their respective motions for summary judgment, the individual Defendants and Defendant HOA claim that she was not adequately maintaining her property, and that when she was confronted by Defendant HOA, she became hostile toward Defendant HOA and the individual Defendants. Indeed, although contested by Plaintiff, affidavits filed by her neighbors are replete with factual allegations describing Plaintiff's own threatening or menacing behavior.

Prior to filing the Complaint in this action, Plaintiff filed a complaint on July 1, 2004, with the New Hanover Human Relations Commission alleging that Defendants violated the FHA and the Fair Housing Ordinance of New Hanover County. The New Hanover Human Relations Commission issued a determination letter, and entered a no reasonable cause finding on the issue of whether Defendants discriminated against Plaintiff because of her religion and gender. It also referred the matter to the North Carolina Human Relations Commission in Raleigh, North Carolina, because Plaintiff's allegations fell under the category of "hate crimes."

The North Carolina Human Relations Commission filed a complaint on behalf of Plaintiff in the General Court of Justice, Superior Court Division, Wake County, North Carolina, on June 14, 2006, alleging a claim for interference with civil rights under N.C. Gen. Stat. § 99D-1. The North Carolina Human Relations Commission later voluntarily dismissed the action without prejudice on

3

January 4, 2007.

On October 12, 2006, Plaintiff filed a complaint with the United States Department of Housing and Urban Development ("HUD") alleging that Defendants had discriminated against her based on her sex, religion, and perceived mental disability in violation of the FHA, and also retaliated against her for filing a fair housing complaint in 2005. On January 28, 2008, after the action in this Court was commenced, HUD dismissed Plaintiff's administrative complaint with a determination that no reasonable cause existed to believe that a discriminatory housing practice had occurred.

## II. FACTS

For purposes of these motions, the Court accepts the following facts as true.[2] Plaintiff purchased her home in Avenel in January or February of 2001. Initially, Plaintiff and her neighbors tolerated, and in some instances were friendly toward, each other, and Plaintiff was very happy living in Avenel. Pl. Dep. 769:7-11 [DE-84-51 at 1]. For instance, Defendants Buccafurri and Murray invited Plaintiff to a Christmas party in 2001, and Plaintiff and these Defendants saw each other socially at restaurants and on a group picnic. Pl. Dep. 1403:4-16 [DE-84-53 at 1]. Further, these Defendants brought Plaintiff food and flowers when she was ill, and came over when she asked them

---

[2] Plaintiff has not submitted a statement of facts in support of her memorandum in opposition to Defendants' motions for summary judgment, nor has she identified where in the record facts exist to support her claims. Rather than scour the record (specifically, Plaintiff's own affidavits and deposition testimony) in an attempt to find facts that support Plaintiff's claims, the Court has looked to the Complaint and finds that the discrimination allegations made therein adequately represent Plaintiff's FHA claim. Accordingly, for purposes of these motions, the Court will assume such allegations are supported by the record and accept them as true. Also, the Court has included facts pinpointed by Defendants that Plaintiff stated at her deposition as well as uncontroverted facts included in affidavits submitted by nonparties that the Court finds relevant to Plaintiff's claims of discrimination. The Court notes that many more factual allegations appear in the record; however, the Court is herein concerned with Plaintiff's FHA claim, and finds that a more thorough recitation of the facts would be unnecessary and distracting.

4

to help give her ideas decorating her home. Pl. Dep. 1405:20-1406:7 [DE-84-53 at 2-3]. Defendant Murray spent one morning showing Plaintiff how to use her boat, mowed her lawn once, and walked her dog for her. Pl. Dep. 1403:15-16; 1405:12-16 [DE-84-53 at 1-2]. In April of 2002, Plaintiff thought of Defendant Progelhof as a very good friend. Pl. Dep. 769:12-14 [DE-84-51 at 1]. Plaintiff ate at Defendant Hull's oyster roast in November of 2002, which Plaintiff found to be a friendly encounter. Pl. Dep. 772:15-21 [DE-78-2 at 25]. In June of 2002, Plaintiff wrote a newspaper article entitled "Home At Last," in which she praised the community of Avenel and thanked everyone for making it a real community. Pl. Dep. 769:4-6 [DE-84-51 at 1]; Ex. 194 [DE-84-39 at 1].

On December 2, 2002, Plaintiff received a letter from Defendant HOA, signed by the Community Manager Kristie Holbrook, thanking Plaintiff for recent improvements to her landscaping. [DE-84-18 at 1.] The letter also requested that Plaintiff finish applying mulch to her yard. *Id.* Plaintiff then went to the annual HOA meeting, where there were other residents unhappy with letters they received. Pl. Dep. 1131:3-25 [DE-78-3 at 10]. After the meeting, Plaintiff went up to the Board members and said, "Gentlemen, you should be ashamed of yourselves." Pl. Dep. 1131:3-25 [DE-78-3 at 10]. Plaintiff was not happy with the Board, and after the meeting put up a sign that said "Liberate Hullsville, Dump Board." Pl. Dep. 1145:3-6 [DE-78-3 at 12].

Thereafter, Defendant Zanzarella drove his car directly at Plaintiff, narrowly missing her, and called her a "bitch" and told her to "get out of the neighborhood." Compl. ¶ 57. Defendants Buccafurri and Murray told Plaintiff that they and Defendant HOA had a plan to get rid of her, ruin her reputation and career in Christian ministry, turn all her friends against her, drive her into a depression so that she would commit suicide, and kill her to get her out of her house. *Id.* ¶¶ 60-63. Defendants Buccafurri, Murray, Dinero, Hull, Progelhof, and Zanzarella called Plaintiff a "Christian

5

bitch" and "Christian cunt" and said that they did not want her in the neighborhood; asked her "what if we screwed your Christian cunt" and "what would Jesus do if they sodomized" her; said they knew she was one of those "born again Christians" who would bring undesirable people into the Avenel community; and indicated that they did not want her bringing African Americans or low-income individuals from her Christian ministries into Avenel. *Id.* ¶ 64. Defendant Hull told her that he did not want a helpless female with medical problems living next door to him. *Id.* ¶ 65. Defendants Buccafurri, Murray, and Hull told other Avenel residents and members of Plaintiff's church that Plaintiff was a Satan worshiper, mentally handicapped, and dangerous, and that she kept weapons and large amounts of cash in her home. *Id.* ¶¶ 67-68. Defendant Hull filed false criminal charges in order to besmirch Plaintiff's reputation and frustrate her attempts to enter ordained Christian ministry. *Id.* ¶ 71. Defendants Buccafurri and Murray repeatedly poisoned her plants and displayed "WWJD" in big lights on the side of their house. *Id.* ¶¶ 73, 77. Defendants Buccafurri and Dinero yelled at Plaintiff "Jesus sucks" and "what would Jesus do if we screwed your Christian cunt." *Id.* ¶ 76. Defendant Zanarella yelled at Plaintiff "hey you fat pig you better get out of the neighborhood." *Id.* ¶ 79. Defendant Buccafurri said "I'm gonna kill you, you Christian bitch." *Id.* ¶ 80. Defendant Dinero put dog feces in her mailbox, and then asked her "now do you know how much everyone hates you, you Christian cunt?" *Id.* ¶ 81.

At the time of her deposition, Plaintiff was still in her home, while the neighbors on either side of her (Defendant Hull and Defendants Buccafurri/Murray) had moved. Pl. Dep. 1099:2-21 [DE-78-3 at 2].

Kim Merritt is an Avenel resident and has never been discriminated against because of her gender, because she is religious, or because she has friends who are minorities. Merritt, K. Aff. [DE-

6

87-3 at 2]. Laura Toppercer is an Avenel resident and has never been discriminated against because of her gender, because she is religious, or because she has friends who are minorities. Toppercer, L. Aff. [DE-87-2 at 3]. Marilyn Lennard is an Avenel resident and has never been discriminated against because of her gender or her Christian religion. Lennard, M. Aff. [DE-87-6 at 4]. Sidney Wicks is an African-American who lived in Avenel and never observed or experienced discrimination. Wicks, S. Aff. [DE-55-3 at 1-2]. Further, although Mr. Wicks found Avenel to be a pleasant place to live, the behavior of Plaintiff was a significant factor in his decision to move in 2005. *Id.* Plaintiff has not directed the Court to, and the Court does not see in the record, evidence of other individuals who were harassed by Defendants because of their gender, religion, perceived disability, or race.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

7

As Plaintiff is a pro se litigant, the Court should "liberally construe" her claims. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). Nevertheless, the Court must be cautious not to transform the special care with which it views pro se filings and become an advocate on the pro se litigant's behalf. *Id.*

## IV. ANALYSIS

Plaintiff alleges a federal claim pursuant to the FHA, and seven state law claims that arise out of the same set of facts supporting the federal claim. The Court will analyze Plaintiff's FHA claim, as it establishes subject matter jurisdiction for this Court.

### A.  FHA Claim

In the Complaint, Plaintiff alleges that the individual Defendants violated the FHA "by engaging in a malicious pattern of harassment, threats, and intimidation for the purpose of interfering with the Plaintiff's quiet enjoyment of her dwelling and for the purpose of coercing her into leaving the Avenel neighborhood." Compl. [DE-1] ¶ 148. She alleges the individual Defendants engaged in this conduct because she: (1) is a woman; (2) is a graduate of the Yale Divinity School; (3) is a candidate for ordained ministry in the United Methodist Church; (4) participates in a Christian Bible study and other Christian groups; (5) associates with African-Americans and invites them to her home; and (6) is perceived as disabled. *Id.* ¶ 149. She also alleges that Defendant HOA is vicariously liable for the wrongful acts of the individual Defendants because "it condoned, ratified, and facilitated their violations of the [FHA]." *Id.* ¶ 150. Plaintiff also alleges that Defendants Buccafurri, Murray, Zanzarella, and the HOA retaliated against her for filing complaints against them with HUD. *Id.* ¶¶ 151-56.

Plaintiff does not allege what specific provision of the FHA Defendants violated.

Nevertheless, the language used in Plaintiff's Complaint most closely mirrors § 3617, which provides that it "shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."[3] 42 U.S.C. § 3617. Accordingly, the Court will construe Plaintiff's Complaint as alleging a violation of § 3617.

Defendants all move the Court for summary judgment on Plaintiff's FHA claim. Defendants' arguments in support of their respective motions for summary judgment regarding Plaintiff's FHA claim can be divided into the following two categories: (1) the FHA does not apply to the actions of which Plaintiff complains; and (2) there is insufficient evidence to support her claims.[4] Each argument will be discussed in turn below.

### 1. The FHA Applies to Post-Acquisition Conduct

Defendants argue that a claim alleging a violation of § 3617 must include a violation of § 3604, which Defendants argue is a prerequisite to maintaining an action under § 3617. Defendants argue that no violation of § 3604 occurred because this provision does not apply to post-acquisition conduct,[5] and therefore Plaintiff's claim under § 3617 cannot stand.

---

[3] Furthermore, § 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status or national origin," and § 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

[4] Defendants also argue that portions of Plaintiff's FHA claim lie outside of the applicable statute of limitations. For purposes of the pending motions, the Court assumes, without deciding, that all claims were timely asserted.

[5] In other words, because the alleged discriminatory actions did not occur in connection with the sale or rental of Plaintiff's property, Defendants maintain § 3604 does not apply.

9

The Seventh Circuit and the Ninth Circuit have both recently rejected Defendants' post-acquisition argument. *See Bloch v. Frischolz*, 587 F.3d 771 (7th Cir. 2009) (concluding that the FHA may reach post-acquisition conduct); *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690 (9th Cir. 2009) (same). In *Bloch*, the plaintiffs were a Jewish family living in a condominium building. *Bloch*, 587 F.3d at 773. As part of their faith, they believed they were called to affix the mezuzot, a scroll inscribed with passages from the Torah, on the exterior doorposts of their dwelling. *Id.* at 772. For almost 30 years, the Blochs displayed the mezuzot, without objection, until the building's association board began enforcing a rule that prohibited items being displayed in the hallways of the condominium building. *Id.* at 773. The Seventh Circuit held, among other things, a plaintiff could sue on the basis of post-acquisition conduct under § 3604 and § 3617. *Id.* at 782 (finding that "§ 3604 requires that the plaintiffs' dwelling be made truly unavailable, or that defendants deprived plaintiffs of their privilege to inhabit their dwelling" and "§3617 reaches a broader range of post-acquisition conduct"). Further, it held that the plaintiffs could assert a claim pursuant to § 3617 without alleging a violation of another section of the FHA; the Seventh Circuit reasoned that holding otherwise would make § 3617 entirely duplicative of the other FHA provisions. *Id.* at 782-83 (finding the § 3617 question in that case to be "whether the defendants coerced, intimidated, threatened, or interfered with the [plaintiffs'] exercise or enjoyment of their right to inhabit their [property] because of their race or religion"). The Court finds *Bloch* to be well reasoned, and finds that Plaintiff may maintain her FHA claim pursuant to § 3617.

### 2. There is Insufficient Evidence to Support Plaintiff's FHA Claim

To prove an intentional discrimination[6] violation of § 3617, a plaintiff must show: (1) she

---

[6] It does not appear that Plaintiff is asserting any sort of disparate impact argument.

10

is a protected individual under the FHA; (2) she was engaged in the exercise or enjoyment of her fair housing rights; (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA; and (4) the defendants were motivated by an intent to discriminate. *Id.* at 783. In this case, the first and second elements appear to be satisfied by Plaintiff, in that she is a protected person engaging in the exercise and enjoyment of her fair housing rights.

With regard to the third element, the Seventh Circuit observed that "[i]nterference is more than a quarrel among neighbors or an isolated act of discrimination but rather is a pattern of harassment, invidiously motivated." *Id.* With regard to the fourth element, Plaintiff may establish Defendants had a discriminatory intent either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method from *McDonnel Douglas*. *Id.* at 784. In some circumstances, "evidence of animus might detract from an intentional discrimination claim—one could assume that the harasser acted out of personal spite instead of improper prejudice." *Id.* at 786. Similarly, although "some conduct of which [the defendant] complains was gender-related–such as [her] co-workers' discussions about sexual practices, and the use of offensive words . . . to describe a woman . . . [a] [d]efendant must demonstrate . . . that a reasonable jury could see the hostility as a product of gender animus rather than the kind of personality conflict that pervades many a workplace." *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008) (ruling in the employment discrimination context that "[s]ome persons, for reasons wholly unrelated to race or gender, manage to make themselves disliked"). The FHA was not intended "to convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case." *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004).

11

In this case, Plaintiff asserts direct evidence of discrimination. However, for over a year before any of the complained of behavior occurred, Plaintiff and her neighbors tolerated, and in some instances were friendly with, one another. Then, on or after December 2, 2002, the relationships soured and the above-described feud ensued. It is abundantly clear that much animosity existed between Plaintiff and Defendants. Further, it may well be that, because of their quarrel with Plaintiff, some derogatory gender-specific, religious-specific, and disability-specific comments were made by one or more Defendants. However, the evidence contained in the record demonstrates that these comments were made, not because Defendants were intentionally discriminating against women, Christians, or disabled persons, or retaliating against Plaintiff for filing a discrimination claim, but rather because they knew such comments would personally offend Plaintiff. In this case, the prior amicable relationships, the several individuals in Avenel similarly situated to Plaintiff but not harassed, and the fact that some Defendants, rather than Plaintiff, have since moved from their homes, belie the contention of Plaintiff that the actions of Defendants were motivated by illegal discrimination or retaliation. As such, the Court finds that Plaintiff's evidence is insufficient for a reasonable jury to conclude that the hostility was a product of genuine discriminatory or retaliatory animus rather than the kind personality conflict that exists in neighborhoods across the country. Accordingly, Plaintiff cannot prove the third and fourth elements of her FHA claim. The Court will therefore grant Defendants' motions for summary judgment with regard to Plaintiff's claim under the FHA.

## B.  Supplemental Jurisdiction over State Law Claims

Plaintiff asserts a claim pursuant to the FHA and seven claims under state law. Accordingly, this Court has original jurisdiction over Plaintiff's federal claim, and supplemental jurisdiction over

Plaintiff's state law claims. 28 U.S.C. § 1367(a). However, because the Court will grant summary judgment in Defendants' favor on Plaintiff's federal claim, the Court may decline to exercise supplemental jurisdiction over Plaintiff's other claims. 28 U.S.C. § 1367(c)(3); *see Hunt v. Branch Banking & Trust Co.*, 480 F. App'x 730, 732 (4th Cir. 2012). In this regard, the Supreme Court has stated that, when "federal claims are dismissed before trial . . . state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Court has considerable discretion in deciding whether to extend supplemental jurisdiction. *Hunt*, 480 F. App'x at 732.

In this case, the Court will decline to extend supplemental jurisdiction over Plaintiff's state law claims. Pursuant to 28 U.S.C. § 1367(d), the period of limitation for any supplemental claim shall be tolled while the claim is pending and for a period of 30 days after it is dismissed. Therefore, Plaintiff will have 30 days after the date of this Memorandum and Order to refile her supplemental claims in state court if she so chooses.

For the above stated reasons:

1. Defendants Stephen Murray and Carmelo Buccafurri's Motion for Summary Judgment [DE-54] is DENIED as moot;

2. Defendants Stephen Murray and Carmelo Buccafurri's Motion for Summary Judgment [DE-55], Defendant David Hull's Motion for Summary Judgment [DE-77], Defendant Richard Progelhof's Motion for Summary Judgment [DE-80], Defendant Thomas Dinero's Motion for Summary Judgment [DE-82], Defendant Avenel Homeowners Association's Motion for Summary Judgment [DE-83], and Defendant Ronald Zanzarella's Motion for Summary Judgment [DE-85] are GRANTED in part with respect to Plaintiff Virginia Radcliffe's claim under the Fair Housing Act, and

13

DENIED WITHOUT PREJUDICE in part with respect to all other claims;

3. The Court declines to extend supplemental jurisdiction over Plaintiff Virginia Radcliffe's remaining state law claims, and such claims are DISMISSED WITHOUT PREJUDICE. The statutes of limitatons are tolled during the pendency of such claims before this Court pursuant to 28 U.S.C. § 1367(d), and Plaintiff will have 30 days after the date of this Memorandum and Order to refile such claims in state court if she so chooses;

4. Plaintiff Virginia Radcliffe's Motion for a Hearing on Affidavits for Defendants Submitted in Bad Faith [DE-127] is DENIED WITHOUT PREJUDICE;

5. Defendant Ronald Zanzarella's Motion to Strike [DE-133] is DENIED WITHOUT PREJUDICE;

6. Defendant Avenel Homeowners Association's Motion to Strike [DE-137] is DENIED WITHOUT PREJUDICE;

7. Plaintiff Virginia Radcliffe's Motion for an Accounting from All Defendants of Alleged "Missing" Discovery Information so Plaintiff Can Supplement [DE-144] is DENIED WITHOUT PREJUDICE;

8. Plaintiff Virginia Radcliffe's Motion for Time to Supplement Her Motions and Memorandum for Medical Reasons Under Medical Seal [DE-145] is GRANTED in part with respect to the request for additional time to supplement her previously filed response with Addendum A and Addendum B and DENIED WITHOUT PREJUDICE in part in all other respects; and

9. Plaintiff Virginia Radcliffe's Motion to Supplement/Amend Her Memorandum

14

Opposing Summary Judgment for Medical Reasons Under Medical Seal [DE-150] is GRANTED in part to the extent it seeks to incorporate Addendum A and Addendum B into her previously filed response and DENIED WITHOUT PREJUDICE in part in all other respects.

SO ORDERED.

This the 12th day of February, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge